Filed 8/4/25  Ortiz v. Morley Construction Co. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| DAVID ORTIZ et al., | B333254 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 18STCV01407) |
| v. | |
| MORLEY CONSTUCTION CO., INC. et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

David Ortiz and Yuko Ortiz, self-represented litigants, for Plaintiffs and Appellants.

Pyka Lenhardt Schnaider Dawkins LLP, David P. Lenhardt, Christina D. Bennette, and Jackson Leverone for Defendants and Respondents.

# INTRODUCTION

Plaintiffs and appellants David Ortiz and Yuko Ortiz,[1] as self-represented litigants, appeal from a judgment entered against them after the trial court granted summary judgment in favor of defendants and respondents Morley Construction, Inc.; Benchmark Contractors, Inc.; 62 Hundred Hollywood South, LP; DLJ Real Estate Capitol Partners, LLC; Clarett West Development, LLC; and Right of Way, Inc. (collectively, respondents).

The action arose from serious injuries sustained by David Ortiz when, on October 29, 2017, he, as a pedestrian walking in a crosswalk at the intersection of Argyle Avenue and Hollywood Boulevard in the City of Los Angeles, was hit by a car driven by defendant Rachel Brinck.[2]

Respondents are all entities associated with a large building construction project that was ongoing at the time of the accident. The project was located at the southeast corner of the intersection of Hollywood Boulevard and Argyle Avenue. It did not extend to the north side of intersection. In connection with that project, temporary, yellow traffic barriers were placed in the street to form a low wall going in a north-south direction on the east side of Argyle Avenue just south of Hollywood Boulevard. This was for traffic control and safety during project construction.

---

[1]     As they share a surname, and for clarity, we sometimes refer to appellants by their first names and mean no disrespect in doing so.

[2]     Defendants Brinck and Curtis Lepore, who owned the car, are not parties to this appeal. Neither is defendant the City of Los Angeles.

The sole factual basis of liability as alleged against all respondents—as restated in several negligence-based causes of action of the operative complaint—was their construction of "a defective [street] barrier that was too high and extended to the edge of the crosswalk [and] into the crosswalk, thereby creating a blind spot for pedestrians on Hollywood Boulevard and Argyle [Avenue]." Respondents' summary judgment motion contended, among other things, that regardless of where in the intersection David Ortiz had been walking when he was hit—a disputed fact—they had not breached a legal duty owed to appellants because it was undisputed that the street barriers placed on Argyle Avenue in connection with the project were too low to have created a visual obstruction. Nor were they placed in or next to the crosswalk where David maintained he had been walking when hit.

Appellants filed an initial opposition to the motion, and then several more before the hearing. None of their filings included a responsive separate statement as required by Code of Civil Procedure section 437c, subdivision (b)(3).[3] And contrary to his deposition testimony included as part of the moving papers, which put the height of the project's street barriers on Argyle Avenue at from three to five feet, the opposition offered by David's declarations that the barriers were nearly twice that and high enough to visually obstruct a pedestrian's view of oncoming traffic. The opposition papers also asserted with no competent evidence as to the standard of care various permit violations by respondents as affecting traffic and pedestrian safety around the project site. On reply, respondents objected to appellants'

_____

[3]      Further unspecified statutory references are to the Code of Civil Procedure.

3

multiple and late-filed oppositions, along with interposing many evidentiary objections.

The trial court's ruling struck appellants' untimely oppositions and excluded much of their evidence as lacking in foundation. The court found that the absence of a responsive separate statement was a sufficient ground to grant the motion. The court alternatively and substantively found that no triable issue of material fact existed such that respondents were entitled to summary judgment as to each cause of action of the complaint as a matter of law for their not having breached a duty of care owed to appellants. Entry of judgment followed, from which appellants timely appealed.

We affirm the judgment.

## STATEMENT OF THE CASE

### I. Factual Background[4]

According to Rachel Brinck, on October 29, 2017, at approximately 5:00 p.m., she was driving her boyfriend's BMW on Hollywood Boulevard traveling eastbound. She pulled into the left-turn lane at the intersection of Argyle Avenue to make a left turn. She stopped in the left-turn lane and waited for vehicular traffic to clear the westbound lanes of Hollywood Boulevard and pedestrian traffic to clear the crosswalk before negotiating her turn onto Argyle Avenue to travel northbound.

As Brinck proceeded to make the left turn onto Argyle Avenue from a stopped position, her BMW suddenly hit David Ortiz as he was traversing the crosswalk across Argyle Avenue on foot. Brinck did not notice him before the impact. According to

---

[4] We take the facts from the evidence considered by the trial court on summary judgment, as limited by what is contained in the appellate record.

Brinck, David was in the crosswalk on the north side of the intersection between the northeast and northwest corners when he was hit. Further according to Brinck and an onlooker standing on the northwest corner of the intersection of Hollywood Boulevard and Argyle Avenue, after the initial impact from Brinck's front bumper in the intersection's northern crosswalk, David's body wrapped onto the hood of the BMW and then was projected off the left side of the hood, coming to rest on the ground in the northern crosswalk of the intersection, with his head facing south and his feet facing north.

According to Brinck, her car had been stopped before beginning the left turn onto Argyle Avenue when she hit David in the crosswalk. According to respondents' accident reconstruction expert, her speed on impact would have been approximately 14 miles per hour.

According to David's testimony at his deposition, when he was hit by Brinck's car, he was walking on Hollywood Boulevard in the *southern*, not northern, crosswalk of the intersection, across Argyle Avenue. There was a protective pedestrian awning over the sidewalk on the southeast corner of the intersection near the construction project site. There was also a temporary, yellow traffic-barrier fence or "wall" on Argyle Avenue going north-south approaching that corner at Hollywood Boulevard, as shown in photos David confirmed depicted the condition of the intersection on the day of the accident. David was asked in his deposition whether the "barrier fence came all the way to the crosswalk that goes from the southeast corner to the southwest corner of Hollywood Boulevard and Argyle [Avenue]." He answered that "[t]he fence was erected up to a point and then there w[ere] some barriers that didn't have the top of the fence, but it was just like

5

a few feet. … [The barrier fence] facing the crosswalk … was three feet [high], maybe five."

The photograph below, Exhibit G to David Ortiz's deposition, and as he testified, shows at the far lower right of the photo the yellow barrier fence in the street on Argyle Avenue going north-south as it existed at the southeast corner of the intersection with Hollywood Boulevard on the day of the accident. (The white car facing the green traffic light in the photo is traveling south.)



*Exhibit G*

The next photo below, Exhibit H to David Ortiz's deposition, and according to his testimony, likewise "accurately represent[s]" the condition of the southeast corner of the intersection of Hollywood Boulevard and Argyle Avenue when the accident occurred.



*Exhibit H*

According to David Ortiz, when he walked out into the street near the pedestrian protective awning at the sidewalk as he traveled westbound on the south side of Hollywood Boulevard at the Argyle Avenue intersection, shown at the lower left of Exhibit H, the light was green for pedestrians to cross Argyle Avenue westerly. He looked left and right as he stepped into the street and into the crosswalk. According to his deposition testimony, the collision with Brinck's car occurred in the crosswalk in the north-south lane of travel on Argyle Avenue in which the dark colored car appears to be traveling at the lower right of Exhibit H, which is the southeastern point of the intersection. But David also testified that he had no memory of

"how the accident took place" and that his understanding of how it happened was just "a logical explanation" based on "the police report and [his location]."

According to the opinion of Cenie Walker, an expert in construction and premises safety and whose declaration respondents offered in support of their summary judgment motion, the "low-profile yellow barriers" used on Argyle Avenue for traffic safety and control in connection with the construction project were "approximately 32-inches tall, less than three feet," per the project's "Traffic Control Plan." She opined that the barriers "did not create a blind spot of the northbound vehicle traffic for pedestrians entering the crosswalk from the southeast corner traversing to the southwest corner," where David Ortiz said he was walking.

After reviewing case materials that included photographs of the project and the intersection taken in 2017, Walker also observed that the "low-profile yellow barriers along Argyle Avenue . . . stop[ped] approximately 20-30 feet before the edge of the pedestrian crosswalk at the south side of the Argyle Avenue and Hollywood B[oulevard] intersection," which was "well before the crosswalk." Walker also reviewed Exhibits G and H to David Ortiz's deposition (shown above) and his testimony that these photos depict the conditions at the intersection on the day of the accident. She opined that the project photos she reviewed from 2017 on which she based her opinions were consistent with and showed the same conditions as reflected in Exhibits G and H.

Walker further opined that "the low-profile yellow barricades were set up in such a way [as] to not create a blind spot or obstruction for pedestrians and vehicles to see each other. The low-profile barriers used along Argyle Avenue give

8

pedestrians, as well as drivers . . . who are coming near to the southside of the intersection of Argyle Avenue and Hollywood B[oulevard,] plenty of direct and peripheral vision to avoid collisions and promote safety. The [project] photos [from 2017] also show that no pedestrian crosswalk area was made smaller or was impacted by the barriers in any way."

According to appellants' declaration filed on July 14, 2023, in opposition to summary judgment, and as David had maintained in his deposition, he was crossing westerly on Hollywood Boulevard at the southern end of the intersection when he was hit, not the northern end where he landed on the ground in that crosswalk. David said in the declaration that there was "[c]onstruction covering sidewalks" and there was a "high fence erected, running north-south in the middle of Argyle Avenue blocking pedestrians from seeing well [o]ncoming cars." He also declared that his "sight line view was blocked, obscured by a high erected fence in the [s]outhern side, in the middle of Argyle Avenue."

Thus, the facts as to the location where David was walking and where in the intersection he was hit by Brinck's car were disputed. But there was no dispute that David sustained serious injuries from the accident. And, critically, even accepting his view of his location in the crosswalk at the southern end of the intersection crossing Argyle Avenue when he was hit, his prior deposition testimony still confirmed that the height of the yellow temporary traffic barriers or fence at that location on Argyle Avenue was from three to five feet and no more. His deposition testimony also confirmed that the location and condition of the barrier fence and the intersection were as depicted in Exhibits G and H on the day of the accident. These photos plainly show,

consistently with Walker's expert declaration, that the wall of traffic barriers did not extend into the crosswalk where David said he was walking when hit and their low height would not have created what would have been a visual obstruction impairing his view of oncoming traffic as he entered the crosswalk.

## II. *Procedural Background*

### A. The Complaint

Appellants timely filed the action on October 19, 2018. The second amended complaint as the operative pleading (complaint) was filed, through counsel, on February 26, 2020. It contained 11 causes of action, six of which were pleaded against respondents. These causes of action as asserted by appellant David were labeled negligent infliction of emotional distress (3rd); general negligence (8th); peculiar risk doctrine (9th); non-delegable duty (10th); and premises liability (11th). As alleged by appellant Yuko, the single cause of action was labeled loss of consortium (4th).[5] All respondents were pleaded to have been associated with the project being constructed on the southeast corner of Hollywood Boulevard and Argyle Avenue in 2017, and to have been responsible in some way for "build[ing] the construction barrier that created a blind spot for pedestrians at the site of the incident" or "erect[ing] construction barriers around" the project site.

---

[5] Causes of action against other named defendants not parties to this appeal were alleged as the first, second, fifth, sixth, and seventh causes of action. These other defendants were also variously named in the causes of action alleged against respondents.

In the third cause of action for negligent infliction of emotional distress, respondents were collectively alleged to have owed appellants a duty of reasonable care, which they breached "by allowing to remain and/or by erecting a tall construction barrier extending to the edge of the crosswalk, or into the crosswalk, thereby creating a blind spot for pedestrians entering the crosswalk." The eighth cause of action for general negligence restated this general factual claim and added that respondents knew of the dangers "to pedestrians at crosswalks at blind spots created where two lanes are reduced to one lane and a construction site abuts part of the crosswalk."

The ninth cause of action, alleged under the "peculiar risk doctrine," pleaded that respondents were involved in the hiring of others "to construct barriers around" the project and that "there were barriers on or adjacent to the edge of the" crosswalk that were "defective" and "too high," thereby "creat[ed] a blind spot for pedestrians" at the intersection. The tenth cause of action for "non-delegable duty" made the same factual allegations, adding that respondents breached their duties "by constructing an unsafe and tall barrier that created a blind spot for innocent bystanders like [David] in the crosswalk."

The eleventh cause of action for premises liability alleged that respondents "owed a duty of care to avoid exposing pedestrians to an unreasonable risk of injury offsite" and "to avoid creating an unsafe condition on the surrounding public streets or sidewalks." Respondents were alleged to have breached that duty by "causing to be built, or allowing to remain, or failing to modify, the defective barrier that extended to, or into, the crosswalk at the corner of Hollywood Boulevard and Argyle

11

[Avenue] and created a blindspot (sic) for pedestrians in the crosswalk."

Thus, the entire factual theory of liability alleged against respondents was their having created "blind spots" by the height and location of the traffic safety barrier or protective fencing placed on Argyle Avenue just south of Hollywood Boulevard in connection with the construction project at that corner of the intersection.

## B. The Motion for Summary Judgment

On March 3, 2023, respondents filed their "motion for summary judgment, or in the alternative, summary adjudication" as to the complaint. The asserted grounds as to the entire complaint and each cause of action alleged against respondents were that they did not owe or breach a duty to plaintiffs.

Respondents' "Separate Statement of Undisputed Material Facts" in support of their motion was 115 pages long and included 349 alleged "undisputed material facts and supporting evidence," many repeated multiple times. The separate statement was divided by "issue," with the first two asserting, respectively, the overarching absence of a breach of a duty owed by respondents to plaintiffs and then the nonexistence of such a duty. These two "issues," as stated, included a potpourri of multiple legal or factual sub-issues.[6] The other six stated "issues"

---

[6]     For example, the first "issue" addressed in the separate statement said: "Evidence shows that defendants did not breach a duty owed to plaintiffs, did not create blind spots for pedestrians walking along the pedestrian crosswalk, were permitted and approved by the City of Los Angeles to have barriers along Argyle Avenue, have photographs and video showing barriers are low-profile, did not impede or come adjacent to the pedestrian crosswalk and, therefore, defendants are

targeted each of the six causes of action alleged against respondents on the same grounds. Thus, it appears the first two "issues" were addressed to the overarching non-existence of a duty or a breach as pervading all causes of action to support summary judgment while the remaining six "issues" alternatively sought summary adjudication of each of the respective causes of action on the same basis.

The motion was supported by deposition transcripts, discovery responses, medical records, contractual and other documents relating to the building project, photographs, police body cam video from the scene of the accident, and three declarations from experts in accident reconstruction, biomechanics, and safety and code compliance and analysis as related to construction projects. This evidence was cited in the separate statement.

The motion factually argued with respect to the "issue" of no breach of duty as to all causes of action that respondents "did not create a blind spot with their construction barriers for pedestrians traversing from the southeast corner to the southwest corner" of the intersection; "the barriers did not impede into the pedestrian crosswalk and were not placed adjacent to the crosswalk"; and the "low-profile barriers extended for another approximately 20 feet away from the crosswalk" and "allowed for unobstructed views of vehicles traveling northbound on Argyle Avenue." These material facts were argued to be undisputed because "David Ortiz confirmed in his deposition that the barriers at that location were indeed low-profile and not

---

entitled to summary judgment of the entire second amended complaint and all causes of action." (Capitalization omitted.)

impeding or running adjacent to the crosswalk," therefore, respondents did "not breach[] any duty owed."

This argument of no breach of duty addressed to all causes of action thus disregarded the disputed factual issues over David's path of foot travel and the location where he was hit in the intersection. The argument credited his testimony on these disputed facts but rendered them immaterial to the overarching question whether respondents were entitled to summary judgment on each cause of action of the complaint for not having breached any duty owed to plaintiffs, the breach of a duty being an element of each cause of action alleged against them. The relevant undisputed material facts as to this question were limited to the traffic barriers on Argyle Avenue being low in height such that they did not create a blind spot for a pedestrian in the southern crosswalk of the intersection and their location in the street as not having impeded or come close to the crosswalk where David said he was hit. The height and location of the traffic barriers as refuting any breach of duty by respondents was argued by respondents to have been confirmed by David in his deposition when he testified that the two photographs, Exhibits G and H shown above, reflected the true condition of the intersection on the day of the accident.

C. Appellants' Oppositions

At appellants' request, the trial court continued the hearing on respondents' summary judgment motion (and the corresponding trial dates) three times, to afford them time to obtain new counsel and on account of their claim that David's injuries impaired their ability to timely respond without counsel. The hearing date was reset to August 10, 2023, and then

14

ultimately continued again to September 18, 2023, with the trial date correspondingly continued to December 2023.[7]

On July 14, 2023, when the motion hearing was still set for August 10, 2023, appellants filed their first "Opposition." The text of this document was composed of their joint declaration, which included conclusory statements about how the construction area for the building project had "incorporated a dangerous zone to the general public, moving traffic safety, pedestrian safety, vehicles contributing to the causes for serious car and pedestrian accidents and public safety violations, especially for pedestrians, primarily." As for the traffic barrier fence, the declaration said, as noted, there was a "high fence erected, running north-south in the middle or Argyle Avenue blocking pedestrians from seeing well [o]ncoming cars." The declaration also maintained that David had been walking in the southern crosswalk of the intersection crossing Argyle Avenue when he was hit, as illustrated by what appellants maintained was a photo from the day of the accident showing the black umbrella he had been holding still laying in that location. The declaration added, as noted, that from that location on the southeastern corner of the intersection, David's "sight line view was blocked, obscured by a

---

[7] This continued trial date appears to have approached the mandatory five-year dismissal statute of section 583.310. This period was extended by six months because of the Judicial Council's emergency rule enacted to address the COVID-19 pandemic. (See Cal. Rules of Court, appen. I, emergency rule 10(a); *Barron v. Santa Clara County Valley Transportation Authority* (2023) 97 Cal.App.5th 1115, 1122–1123 [emergency six-month extension for mandatory dismissal applicable to civil actions filed on or before April 6, 2020].)

15

high erected fence in the [s]outhern side, in the middle of Argyle Avenue" when he was hit.

Appellants' opposition filed on July 14, 2023, did not include a response to the moving parties' separate statement of undisputed material facts as required by section 437c, subdivision (b)(3).

As the trial court later referenced in its summary judgment ruling, on August 2, 2023, appellants filed what they apparently captioned as their "Affidavit of Opposition for Summary Judgment" before the hearing then still set for August 10, 2023. This document is not included in the record on appeal. This opposition was ultimately considered by the court in ruling on the summary judgment motion, as the court viewed the continued date of the motion hearing to September 18, 2023, as having retroactively rendered it timely filed.

D. <u>Respondents' Reply and Evidentiary Objections</u>

Respondents filed their reply brief and related papers on August 4, 2023, when the motion hearing was still set for August 10, 2023. They objected to appellants' opposition filing on August 2, 2023, as being late and further objected to the absence of a responsive separate statement. The reply also included concurrently filed objections to appellants' proffered evidence—their declaration filed on July 14, 2023, and their "Affidavit of Opposition" filed on August 2, 2023, and attached photos.

The 44 evidentiary objections targeted as to appellant Yuko that she had no personal knowledge of any facts of the accident as stated in the joint declaration or "Affidavit," as she was not present when it occurred, so the statements in the declaration and "Affidavit" as attributed to her lacked foundation. As to statements attributed to appellant David in the declaration and

16

"Affidavit," the objections asserted multiple grounds. They mainly contended that (1) his statements lacked foundation for the absence of his personal knowledge or opinion expertise, (2) his statements were conclusory and based only on speculation and conjecture, and (3) certain of his statements, notably about the height of the barriers and the condition of the intersection at the time of the accident, directly conflicted with his deposition testimony and should therefore be excluded from consideration under *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21–23 (*D'Amico*) and *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, footnote 12 (*Shin*).

### E. Appellants' Later Summary Judgment Filings

As is evident from the trial court's later ruling, the register of actions, and the clerk's transcript on appeal, appellants serially filed additional summary judgment opposition documents on August 4, 2023 ("Affidavit of Opposition For Summary Judgment," not in the record); on August 7, 2023 ("Affidavit of Opposition for Summary Judgment," included in the record and "Updated—Affidavit of Opposition for Summary Judgment," not in the record); on August 9, 2023 ("Affidavit of Opposition For Summary Judgment," included in the record; on September 6, 2023 ("Affidavit of Merit Opposition for Summary Judgment," not included in the record; on September 8, 2023 ("Amended Affidavit of Merit Opposition For Summary Judgment," not included in the record); and on September 11, 2023 ("Amended Affidavit of Merit Supplemental Opposition For Summary Judgment," not included the record).[8]

---

[8] Thus, the only one of appellants' two filed oppositions considered by the trial court that is included in the record on appeal is the one filed on July 14, 2023.

17

Respondents also filed additional reply papers responding to some of these belated opposition filings.

F.  The Hearing and the Trial Court's Rulings

Before the continued hearing on September 18, 2023, a Monday, the trial court issued a tentative ruling granting respondents' motion for summary judgment on the entire complaint. At the hearing, David Ortiz referenced an accident reconstruction expert named Felix Lee who had prepared a report for appellants. The trial court asked whether Lee's declaration had been presented in opposition to the motion. David responded that he had the declaration right there in the courtroom, had only received it the prior Friday, and had e-mailed it to respondents' counsel. Counsel replied that she had received documents from appellants by e-mail over the prior weekend but had not been able to access them and had informed appellants of this without response, and she had thus not seen the Lee declaration.

After the hearing but on the same day, the trial court issued its ruling adopting its tentative verbatim and granting respondents' motion for summary judgment on the entire complaint. The order struck as untimely appellants' opposition filings after those filed on July 14 and August 2, 2023, but only specifically mentioned in its strike order those filed on September 6, 8, and 11, 2023 (none of which are in the appellate record). The court thus considered the motion fully briefed after respondents' reply papers filed on August 4, 2023, and it did not consider any later filings from either side.

The order also ruled on respondents' evidentiary objections, excluding various statements contained in appellants' July 14 and August 2, 2023 oppositions. As to factual statements about the accident attributed to appellant Yuko, the court sustained

18

objections based on her lack of personal knowledge as she was not present when it occurred. As to statements attributed to appellant David, the court sustained many on the ground of a lack of foundation. These included his conclusory, speculative, or incompetent statements about respondents' alleged violations of safety standards; and his statements contradictory to his deposition testimony as to the height and location of the street barriers placed on Argyle Avenue and the condition of the intersection when the accident occurred.

The court overruled respondents' objections to David's statements as to his path of travel and the location in the intersection where he claims he was hit. Thus, these facts remained disputed.

On the merits, the trial court concluded that respondents had met their initial burden on summary judgment and had further shown there was no triable issue of material fact on the overarching issue of no breach of a duty owed to appellants as to each cause of action. As to respondents' alleged negligence, the court noted that the complaint pleaded only that they had created "blind spots for pedestrians walking along the crosswalk that runs from [the] southeast to southwest corners of Argyle Ave[nue] and Hollywood Blvd" by their building of construction barriers "at the site of the incident." The court determined the evidence indisputably showed that respondents "did not breach their duty of care to [p]laintiffs because they did not create blind spots at the [s]ubject intersection."

The court cited the Walker expert declaration as "attest[ing] that photos from 2017 of the construction site and Argyle Avenue show protective covering of the construction site facing Argyle Avenue and low-profile yellow barriers along the

street that stop well before the pedestrian crosswalk, approximately 20-30 feet from the crosswalk. … Walker declares, per the [project's] Traffic Control Plan, the low-profile yellow barriers are approximately 32-inches tall, less than 3 feet. … Walker attests that it is her opinion the low-profile yellow barriers do not create a blind spot of the northbound vehicle traffic for pedestrians entering the crosswalk from the southeast corner traversing to the southwest corner. []"

The court further cited Walker as having attested in her declaration to having viewed police body cam video from the day of the incident, which showed "clear views of the southeast corner of Hollywood B[oulevard] and Argyle Ave[nue]," and also having attested that "the condition of the low-profile yellow barriers, the fencing, and the crosswalk appear to be the same as in the [project] photos from September 2017 and June 2017 and those shown to David Ortiz at his deposition. []"

The court also cited David Ortiz's deposition testimony concerning Exhibits G and H. "David Ortiz testified that the condition of the construction fencing and the low-profile barriers depicted in the two photos showed the same condition of the construction fencing and the low-profile barriers on the day of the accident. []"

Based on these cited facts, the court determined that respondents had met their "initial burden of proof that no triable issues of material facts exist[] as to [p]laintiffs' causes of action because [d]efendants did not create any blind spots in breach of their duty of care"—the only factual basis of their negligence liability as alleged in the complaint as to each cause of action against them.

20

The burden on the motion having shifted to appellants, the court's order acknowledged David's statement in his July 14, 2023 declaration that his " 'sight line view was blocked, obscured by a high erected fence in the [s]outhern side, in the middle of Argyle Avenue when [he] was struck" and his statement in his affidavit filed on August 2, 2023, that the "blind spots" were created by the " '10-12 foot high fence.' " The court ultimately concluded that these statements were contradictory to David's deposition testimony and thus insufficient to create a triable issue of material fact. The court disregarded the statements, citing *Cohen v. Kabbalah Centre Internat., Inc.* (2019) 35 Cal.App.5th 13, 18–19 ("The tactic of changing one's story to avoid summary adjudication is improper") and *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473 ("Where a party's self-serving declarations contradict credible discovery admissions and purport to impeach that party's own prior sworn testimony, they should be disregarded"). The court quoted David's deposition testimony as to " 'that little yellow wall' " as shown in Exhibits G and H and concluded that this testimony was "consistent with the statements [offered by expert Walker's declaration] that the barriers were only approximately three feet high and not so high as to block the view of an average adult individual." The court further concluded that as to David's contradictory statements of a much higher barrier or fence, he had "provide[d] no explanation for this discrepancy" and no "reasons as to how or why [the barriers had] impeded his sight and contributed to the accident."

The court further noted, after concluding that respondents had met their initial burden, that appellants had not included a responsive separate statement in their oppositions to summary

21

judgment, in violation of section 437c, subdivision (b)(3). The "court, in its discretion[, found] this is [a] sufficient ground alone to grant [respondents'] motion." The court went on to conclude "in addition" that appellants had not shown the existence of a triable issue of material fact after considering their evidence that had not been excluded or disregarded. Thus, the trial court granted summary judgment on two independent bases, one technical and the other substantive.

The trial court issued a second written order the same day "affirm[ing] its tentative granting" respondents' motion for summary judgment. This order "attached [the court's] ADVISEMENT TO SELF-REPRESENTED LITIGANTS (PRO PERS)" in which the "court repeats again and again that self-representation is ALMOST ALWAYS UNWISE. [¶] The case is still at the summary judgment stage, yet [p]laintiffs made many mistakes as pointed out in the court's Order, among others: failure to submit a Separate Statement, failure to file their oppositions on time except the Aug. 2, 2023 Affidavit of Opposition only because the hearing was continued. Plaintiff David Ortiz's statements have no foundation for their exhibits. Plaintiffs maintained in their Opposition [filed August 2, 2023] that the barrier w[as] a '10-12[] foot high fence' or was 'an erected fence over 6 feet high' which completely contradicted David Ortiz's deposition statement of: 'Three feet, maybe five.' He did not provide any explanation for the discrepancy."

The court entered judgment in respondents' favor on October 5, 2023.[9] Appellants timely appealed.

---

[9] Contrary to the one-final-judgment rule, there are two judgment documents in the record filed the same day, one on pleading paper attaching the court's written order granting

22

## DISCUSSION

*I.    The Record on Appeal, Appellants' Briefs, and the Scope of Our Review*

### A. The Record

The designated clerk's transcript omits many relevant materials and is deficient for our review of the trial court's ruling on summary judgment. It also includes voluminous matter extraneous to the issues within the proper scope of that review. And to the extent we can identify various other claims in appellants' likewise deficient briefing, the record does not include the challenged orders or rulings that appear to be the subject of those other claims.

Given the record deficiencies in the clerk's transcript, respondents filed with their brief a motion to augment the record, which this court previously granted. That motion added to the record (in five volumes) the moving and reply summary judgment papers.

Earlier, on March 7, 2024, appellants had filed their own first motion to augment the record, which is governed by rule 8.155 of the California Rules of Court.[10] The motion was opposed

---

summary judgment, and the other on a one-page superior court form. Both documents enter judgment in respondents' favor and dismiss them from the action with prejudice. Notice of entry of each judgment was served on October 5 and 6, 2023, respectively. Appellants' notice of appeal was also promptly filed on October 6, 2023, so there is no issue presented by the different dates of service of notice of entry of judgment. (See Cal. Rules of Court, rule 8.104 as to timing of a notice of appeal triggered by service of notice of entry of judgment).)

[10]    Rule 8.155(a) provides that at any time, on motion of a party or its own motion, the reviewing court may order the record

---

by respondents and remains pending. This motion seeks to add to the record six categories of documents, all attached as exhibits to the motion.

The first two, exhibits 1 and 2, are appellants' designation of the record filed in superior court on January 5, 2024, and their notice of appeal, filed in superior court on October 6, 2023. We deny the motion as to these documents as they are already in the clerk's transcript (at pp. 1277-1289 and 1034-1037, respectively).

Exhibit 3 is a series of unauthenticated photographs collectively labeled "Plaintiff: David Ortiz Arrival at Cedars Sinai, Completely Unconscious. October 29, 2017." These photos do not appear to have been filed in the superior court as part of any document and they do not appear to have been submitted by appellants in opposition to, or considered by the court in ruling on, the summary judgment motion. "Augmentation does not function to supplement the record with materials not before the trial court. [Citations.] . . . Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons Companies*); see *DeYoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863 [document not presented to the trial court fell outside the scope of augmentation and could not be considered by reviewing court].) The photos attached as exhibit 3 to the motion to augment are therefore not properly part of the appellate record and the motion is denied as to them.

---

augmented to include "[a]ny document filed or lodged in the case in superior court" or a certified transcript or agreed or settled statement of oral proceedings "not designated under rule 8.130."

Exhibit 4 to appellants' first motion to augment is a lengthy document filed in superior court on August 29, 2023. It is captioned "08-29-2023. AFFIDAVIT (Notice Proof [o]f search for Personal Injury Trial Lawyer" and it includes voluminous correspondence between appellants and many lawyers and law firms reflecting sustained but unsuccessful efforts by appellants to obtain new counsel to represent them in superior court. While we do not doubt appellants' serious but ultimately unsuccessful efforts in this regard, the document is not relevant to the issues we can identify as properly within the scope of our review on this record, which appear to concern only the trial court's grant of summary judgment. Appellants do not appear to challenge by reasoned argument any other cited order of the trial court within the record as to which this document was considered and was relevant. We therefore deny the motion to augment as to this filed document. (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 696, fn. 4 [denial of motion to augment record with material not relevant to resolution of issues on appeal].)

Exhibit 5 to appellants' first motion to augment is a follow-up to the original police Traffic Collision Report from the accident. The original report is already in the record as augmented by respondents' motion, as exhibit 2 to the Compendium of Exhibits filed in support of their motion for summary judgment. The follow-up report is also included in the augmented record as exhibit 11 to the same Compendium. As the follow-up report is already included in the augmented record on appeal, we deny appellants' motion to augment as to this document.

25

Exhibit 6 to appellants' first motion to augment is an unfiled declaration of their accident reconstruction expert, Felix Lee, accompanied by his December 9, 2021 report. The declaration, which does not refer to or incorporate the report, appears to have been signed by Lee on September 15, 2023, which is consistent with the colloquy at the motion hearing on September 18, 2023, when David indicated in response to the court's inquiry that he had just received the expert's declaration the prior Friday. This declaration does not appear to have been independently filed in superior court. And it was generated too late to have been considered by the court in its summary judgment ruling. The document was not in fact considered, as is evident from the record. For this reason alone, it is not the proper subject of augmentation.[11] (See *Vons Companies, supra*, 14 Cal.4th 444, fn. 3.)

---

[11] Respondents' opposition to appellants' motion to augment indicates that Lee's December 2021 report, not his declaration, was included in appellants' opposition to the motion for summary judgment filed on August 2, 2023. But we are not in a position to confirm this because that opposition document is not a part of this appellate record. We can say that the trial court sustained respondents' objection for a lack of foundation to a "CRC accident reconstruction report" apparently included with appellants' August 2, 2023 opposition filing. We can also say that an 18-page report dated December 9, 2021, on "CRC" letterhead and authored by Lee appears in the clerk's transcript at pages 877-895. But this document as an exhibit was part of a petition for writ of mandate filed by appellants in this court on October 2, 2023, a copy of which was also apparently filed by them in superior court as it is included in the clerk's transcript in this appeal. That writ petition was filed after the trial court granted summary judgment in this case but before entry of judgment in

26

Exhibit 7 to appellants' first motion to augment is described as a "Declaration of Bob Malek, Accident Reconstruction Expert." The declaration is three pages. It does not show it was filed in superior court and it appears to have been signed on September 25, 2023, *after* the trial court granted respondents' summary judgment motion. Attached to the declaration is a multi-page report apparently dated March 31, 2023, and directed to appellants' prior counsel. It does not appear that appellants offered this material in opposition to the summary judgment motion or that it was considered by the trial court in making its ruling. The declaration and report are therefore not properly the subject of record augmentation. (See *Vons Companies, supra,* 14 Cal.4th 444, fn. 3.)

We accordingly deny in full appellants' first motion to augment the record filed on March 7, 2024.

Appellants filed in this court their second motion to augment the record (errantly labeled as "Amended Motion") on March 19, 2024. The ruling on that motion was expressly

---

respondents' favor. It was captioned *David Ortiz, et al. v. Superior Court*, case number B332093. We take judicial notice on our own motion of this court's docket in that original proceeding, which reflects that the petition was summarily denied on October 17, 2023, for "failure to provide an adequate record for review." That Lee's report of December 2021, is included in the clerk's transcript on appeal as part of that petition does not mean it is appropriate for us to consider it when conducting our review, as it appears the trial court excluded the same document from its consideration by sustaining respondents' objection to it for lack of foundation. Appellants do not challenge this evidentiary ruling on appeal by offering any reasoned argument or demonstrating an abuse of discretion.

deferred to this panel by order dated April 2, 2024. Respondents also opposed this motion and we address it now.

Exhibit A (or 1) to appellants' second motion to augment is a DVD asserted to contain "44 and 2 pictures" consisting of videos and photos, all seemingly new evidence not offered to or considered by the trial court in ruling on the summary judgment motion. As previously explained, such matter is not the proper subject of record augmentation and we deny the motion as to this exhibit. (See *Vons Companies, supra*, 14 Cal.4th 444, fn. 3.)

Exhibit B (or 2) to appellants' second augmentation motion is labeled "3 photos of black bag and a short umbrella" and consists of these described photos. Again, these materials were not filed in superior court, were not offered in opposition to the motion for summary judgment, and were not considered by the trial court in making its ruling. They are therefore not appropriate for inclusion in the appellate record by augmentation. (See *Vons Companies, supra*, 14 Cal.4th 444, fn. 3.)

Exhibit C (or 3) to appellants' second motion consists of six photos of a building site described as "an example of no high fence at a similar construction site reflecting safer zone for pedestrians and traffic-drivers. This location site is located on south section of Argyle Ave[nue] between Selma Ave[nue] and Sunset Blvd." Once again, these materials were not filed in superior court, were not offered in opposition to the motion for summary judgment, and were not considered by the trial court. They are therefore not appropriate for inclusion in the appellate record by augmentation. (See *Vons Companies, supra*, 14 Cal.4th 444, fn. 3.)

Appellants also included in their second augmentation motion a reference to a document they filed in superior court on September 14, 2023, described as "Plaintiffs Oppose Misinformation and Misleading Facts." This document appears to already be in the clerk's transcript (at pp. 362-366), though its relevance to the issues on appeal is not apparent. It was filed in superior court too late for appellants' opposition to summary judgment and it does not appear that it was considered by the trial court in making its ruling. As the document is already in the appellate record, we deny augmentation as to it.

We accordingly likewise deny in full appellants' second motion to augment the record filed on March 19, 2024.

B. <u>Appellants' Briefs and the Scope of Our Review</u>

Appellants' Amended Opening Brief, which was allowed by prior order of this court and which supersedes their first opening brief, does not comply in numerous respects with the requirements of rule 8.204 of the California Rules of Court. This rule describes the required content and format of briefs filed in our state appellate courts. Most crucially, in violation of rule 8.240(a)(1)(C), the Amended Opening Brief contains not a single record citation. (Cal. Rules of Court, rule 8.240(a)(1)(C) [parties must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) Appellants' Reply brief suffers from this same significant and crucial defect.

Further, both their opening and reply briefs contain references to matters outside the appellate record, as augmented, and to matters not before the trial court when it ruled on respondents' motion for summary judgment, some of which are stated to have occurred after entry of judgment in the litigation

29

as to respondents, as the case remained ongoing in the trial court against other defendants. Appellants' briefs further contain arguments, such as those made against their former counsel for malpractice and against the trial judge for bias and for violations under the Americans with Disabilities Act (42 U.S.C. § 12111 et seq.), which were not raised and determined below by specifically cited rulings in this appellate record.

Appellants' briefing thus fails to meet their burden on appeal. It is a fundamental principal of appellate procedure that a trial court order or judgment is ordinarily presumed to be correct, and the burden is on an appellant to affirmatively show the trial court committed an error that justifies reversal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) To meet this burden, an appellant must provide cogent legal argument in support of their claims of error with citation to legal authority, as well as supporting references to the record. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C) [opening brief must provide a summary of the significant facts limited to matters in the record and must support any reference to a matter in the record by a citation by volume and page number where the matter appears]; *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [to demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record supporting the claim]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 (*Badie*); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) We are not obligated to perform this function on an appellant's behalf and may treat the contentions

deficiently raised on appeal as waived. (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113; *Badie*, at pp. 784–785; *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [court may treat point as forfeited if the point is not supported with reasoned argument and citations to authority].) We may further disregard portions of an appellant's brief that fail to comply with these rules.[12] (*Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388, 392, fn. 2.)

We recognize that appellants here are self-represented litigants, both in the trial court when the court considered and ruled on the motion for summary judgment and on appeal. Because of this, appellants argue they should be, and should have been, afforded leniency and special consideration. But self-represented litigants are held to the same standards as attorneys and must comply with the rules of procedure. (See *Rappleyea v. Campbell* (1994) 8 Cal. 4th 975, 984–985 [difficulties of providing special treatment to parties who represent themselves]; *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543 (*Kobayashi*).) Thus, as a general rule of California law, "in propria persona litigants, like appellant[s], are entitled to the same, but no greater, rights than represented litigants." (*Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1487 (*Apollo*); *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) This general rule is subject to exceptions. For example, it " 'must yield to the even greater principles of providing [self-represented litigants] with

---

[12]     We disregard noncompliant portions of appellants' briefing but specifically strike their declarations attached to their Amended Opening Brief at pages 37–38, which are improper matter included in any appellate briefing.

meaningful access to the courts and of deciding bona fide civil actions on their merits.' " (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 469, quoting *Apollo, supra*, 167 Cal.App.4th at p. 1487.)

Having reviewed the entire augmented record in this appeal, we conclude that appellants were provided with meaningful access to the courts, including being granted multiple continuances of the summary judgment hearing and the opportunity to have filed more than one opposition that was considered by the trial court in its ruling. Nor can we say that the action was resolved against appellants in the trial court in anything other than a bona fide manner. The summary judgment procedure is a proper and legally available means for a party to obtain a favorable disposition in a case despite that it deprives the opposing party of a jury trial.

As to a case on appeal, we acknowledge that a self-represented litigant's understanding of the appellate rules and procedural requirements is likely to be more limited than that of an experienced appellate attorney. But, as in the trial court, appellants are not entitled to "special treatment" on appeal and they are held to the same standards as a party represented by counsel. (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524; *Kobayashi, supra*, 175 Cal.App.4th at p. 543.)

Given the deficiencies in appellants' briefing and their numerous undeveloped and conclusory arguments made without citation to authorities or to the record, and the inadequate state of the record to permit review of these claims, we will deem waived all points or arguments made in appellants' briefing other than that the trial court erred by granting respondents' summary

judgment motion. (See *Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003, 1021–1022.) Accordingly, we deem waived and decline to reach appellants' other claims. These include those related to other defendants (such as the City of Los Angeles or Curtis Lepore) whose potential liability in this case was not addressed in respondents' summary judgment motion and was not adjudicated in the summary judgment they obtained; malpractice against appellants' prior counsel; bias or misconduct exhibited by the trial judge in rulings not in this record or the judge's claimed recusal from the case a year after granting summary judgment; violations of the ADA; misconduct by respondents' counsel; corruption within the Los Angeles City government; and various other discovery or pleading rulings claimed to have been made at some point by the trial court in error but which are not contained within the record on appeal and as to which appellants have not tendered proper legal argument with citations to the record. These claims are all beyond the scope of our review in this appeal and we do not reach them.

## II. Standard of Review

We review a grant of summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We examine the facts presented to the trial court and determine their effect as a matter of law. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) We review the entire record, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. (*Ibid*.) Evidence presented in opposition to summary judgment is liberally construed, with any doubts about

33

the evidence resolved in favor of the party opposing the motion. (*Ibid.*)

A defendant moving for summary judgment bears the initial burden to show that a cause of action has no merit by establishing that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 160 (*Calemine*); § 437c, subd. (p)(2).) Once a defendant meets that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or defense thereto, supported by evidence of specific facts and not mere allegations of the pleadings. (*Calemine*, at p. 160; § 437c, subd. (p)(2); *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889. (*Carlsen*).) Admissible evidence is required to show that disputed issues of material fact exist. (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 994.) " 'An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." ' " (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525; *Carlsen,* at p. 227 Cal.App.4th at pp. 889–890 [responsive evidence that gives rise to no more than speculation is insufficient to create triable issue of fact].)

" 'The trial court must grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ([] § 437c, subd. (c).)' (*Mitchell* [*v. Los Robles Regional Medical Center* (2021) 71 Cal.App.5th 291], 296.) Whether a factual issue is material is determined by the pleadings which ' "set the boundaries of the issues to be resolved at summary judgment." ' (*Conroy v. Regents*

34

*of University of California* (2009) 45 Cal.4th 1244, 1250.) The moving party's burden is to negate the theories of liability alleged in the operative pleading, not to ' " ' " 'refute liability on some theoretical possibility not included in the pleadings.' " ' " . . . ' (*Id.* at pp. 1254–1255.) The moving party is not required 'to negate elements of causes of action plaintiffs … never pleaded.' (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 182.)" (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 224.)

Thus, the first step for a court reviewing a summary judgment motion is to identify the issues framed by the pleadings. If the moving party is a defendant, the second step is to decide whether they have met the burden of showing that the causes of action in the complaint have no merit, meaning that one or more elements of the cause of action cannot be established or there is a complete defense. § 437c, subds. (o), (p)(2); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) If the moving defendant has met this burden, a court proceeds to the third step to determine whether the plaintiff has presented evidence showing that a triable issue of one or more material facts exists as to the cause of action. (§ 437c, subd. (p)(2).) Even when a motion is unopposed, the moving party must still meet its initial burden before the trial court may grant summary judgment. (*Harman v. Mono General Hospital* (1982) 131 Cal.App.3d 607, 613.)

" '[T]he trial court's stated reasons for granting summary judgment "are not binding on [a reviewing court] because we review its ruling, not its rationale." ' [Citation.] We affirm the summary judgment if correct on any of the grounds asserted in

the moving party's motion." (*Carr v. City of Newport Beach* (2023) 94 Cal.App.5th 1199, 1204.)

While our review of a grant of summary judgment is de novo, our review of the trial court's exercise of discretion in its evidentiary rulings or its striking or disregarding of late-filed papers is for abuse of that discretion. (*San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 962; *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679 [evidentiary rulings]; *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765–766 [trial court has broad discretion under Cal. Rules of Court, rule 3.1300(d) to disregard late-filed papers submitted without a prior order finding good cause].)

We likewise review for abuse of discretion a trial court's ruling to grant summary judgment for the opposing party's failure to comply with the separate-statement requirement, once the court has determined that the moving party has met its initial burden on the motion. (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 901 (*Whitehead*), citing *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1208 (*Parkview Villas*) [in applying abuse of discretion standard of review, appellate court does not substitute its judgment for that of the trial court; but trial court's judgment must have been exercised in conformity with the law and to subserve and not impede or defeat the ends of substantial justice].)

### III.    Analysis

As noted, the trial court's order here first struck appellants' untimely opposition papers, and allowed only those filed on July 14, 2023, and August 2, 2023 (this filing not in the appellate

36

record). The court also ruled on respondents' evidentiary objections, excluding portions of appellants' proffered evidence for lack of foundation or disregarding statements inconsistent with David's prior deposition testimony. Appellants do not specifically challenge these discretionary rulings and their briefing articulates no such arguments. But because appellants argue generally that the granting of summary judgment was error, we will briefly address them.

Based on our review of the record, the trial court acted well within the bounds of reason in these discretionary rulings. Appellants continued to file multiple, serial oppositions to the motion after it was fully briefed on August 4, 2023. While the motion hearing was later continued to September 18, 2023, appellants had already filed two oppositions, on July 14, 2023, and August 2, 2023, and the court ultimately considered both. Moreover, appellants did not seek leave of court for their multiple later filings. Nor did they seek a fourth continuance of the hearing to allow them to further develop facts with which to oppose the motion. Under these circumstances, the trial court's decision to strike or disregard appellants' belated serial oppositions was hardly arbitrary, capricious, or outside the bounds of reason.

As for the court's exercise of discretion to disregard David's statements in his opposition declaration and affidavit that the court found directly inconsistent with his deposition testimony— namely about the height and location of the traffic barriers placed on Argyle Avenue and the condition of the intersection at the time of the accident—we likewise conclude the court acted well within its discretion. A "party cannot create an issue of fact by a declaration which contradicts his prior discovery responses."

(*Shin, supra,* 42 Cal.4th at p. 500, fn. 12, citing *D'Amico, supra,* 11 Cal.3d at p. 22.)

As explained in *D'Amico*, " '[w]here . . . there is a clear and unequivocal admission by the plaintiff, himself, in his deposition'" and the plaintiff contradicts that admission in a subsequent declaration, " 'we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' " (*D'Amico, supra*, 11 Cal.3d at p. 21.) The *D'Amico* court explained that admissions against interest made in a discovery procedure designed to elicit facts have a "very high credibility value." (*Id.* at p. 22.) But such admissions should still not be shielded from careful examination outside the context of the entire record, as "the record may contain evidence that *credibly* contradicts or *explains* what might appear to be clear and unequivocal admissions, if the admissions are viewed in isolation and without reference to the other evidence." (*Ahn v. Kumbo Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 144.) Thus, it is not appropriate to apply the *D'Amico* rule to exclude or disregard evidence adduced in opposition to summary judgment when other evidence credibly explains or contradicts a party's earlier admissions. (*Id.* at pp. 144–145; see e.g., *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1503 [prior deposition testimony credibly explained by declaration stating party did not understand the deposition question].) But absent a reasonable explanation for a discrepancy, a court may disregard declarations that contradict a clear and unequivocal admission in a party's own prior discovery responses.

The trial court here found David's declaration and affidavit filed in opposition to summary judgment to directly contradict his prior deposition testimony as to the height and location of the

street barriers and the condition of the intersection on the day of the accident, as specifically referenced and depicted in Exhibits G and H to his deposition. The court also found that David offered no explanation for the discrepancies and that other evidence in the record was consistent with his prior deposition admissions. Based on our review of the entire augmented record, we cannot say that these findings and the court's disregard of David's later contradictory statements in opposition to the motion exceeded the bounds of reason or the law.

As for the trial court's purely evidentiary rulings, we likewise see no abuse of discretion. Appellant Yuko was not present when the accident occurred and her factual statements about it are thus not based on her personal knowledge, as the trial court ruled. David was not competent to offer expert opinion testimony about respondents' alleged safety violations and the standards of care applicable to such issues in the case. Others of his statements were conclusory and based on no more than speculation and conjecture. And many of his statements were not relevant to the issues presented on summary judgment. It was neither disputed nor relevant to the motion, for example, that David sustained grievous injuries and suffered extensive damages when Brinck's car ran into him in a crosswalk in the intersection. The primary question was instead whether there were disputed issues of material fact about respondents having created "blind spots" that contributed to the cause of the accident by their placement of barrier fencing on Argyle Avenue near the project site. As for the attachments to appellants' oppositions, such as numerous photographs, the attachments were not authenticated, there was no foundation laid for them, and many were simply not relevant to the motion. We accordingly find no

39

abuse of discretion in the trial court's evidentiary rulings excluding or disregarding evidence offered by appellants in opposition to the motion.

The trial court next determined in its order that respondents had met their initial burden to show that the causes of action pleaded against them in the complaint had no merit. The court determined the moving papers showed the complaint's causes of action alleged against respondents—all premised on a duty owed and breached—could not be established given the proffered undisputed material facts establishing that respondents had not breached a duty of care owed to appellants as alleged. The only factual basis of liability pleaded in each cause of action as the basis of such a breach was their having created "blind spots" or visual obstructions to pedestrians and cars in the intersection by the height and location of the traffic safety barriers or fencing placed on Argyle Avenue south of Hollywood Boulevard. But the undisputed material facts on this issue as established by the moving papers were that the traffic barriers or fencing, by their height and location, could not have created the alleged blind spots or visual obstruction leading or contributing to the accident. The court cited the Walker declaration and David's deposition testimony, including his responses to deposition questions about the depictions in Exhibits G and H, to establish as undisputed material facts that (1) the height of the traffic barrier fencing did not exceed three to five feet, and (2) its placement in the street was not in or next to the crosswalk so as to impede the view or create a visual obstruction where David maintains he was hit by Brinck's car in the intersection's southerly crosswalk.

Based on our de novo review of the augmented record, we likewise reach the conclusion that respondents met their initial burden on the summary judgment motion, shifting the burden to appellants to demonstrate by opposition with admissible evidence the existence of a triable issue of material fact. We emphasize that the disputed facts concerning David's path of travel, Brinck's path of vehicular travel, and the location of impact were not material to respondents' showing of entitlement to summary judgment on the basis that they did not breach a duty owed. Respondents' showing credited or assumed David's version of those disputed facts for purposes of these arguments.

Having concluded that respondents met their initial burden as moving parties, the trial court then exercised its discretion to decide that appellants' failure to have filed a responsive separate statement as required by section 437c, subdivision (b)(3) was a sufficient basis to grant the motion. We see no abuse of discretion in this determination, either.

The summary judgment statute provides that a party opposing a motion must "include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement shall also set forth plainly and concisely any other material facts the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement . . . may constitute a sufficient ground, in the court's discretion, for granting the motion."[13] (§ 437c, subd. (b)(3);

---

[13] This provision has been interpreted to mean that the failure to submit a separate statement does not relieve the

41

see, e.g., *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 568; *Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 831–833; *Rush v. White Corp.* (2017) 13 Cal.App.5th 1086, 1097.)

Rule 3.1350(d) of the California Rules of Court further explains this requirement. It states: " 'The [s]eparate [s]tatement of [u]ndisputed [m]aterial [f]acts in support of a motion must separately identify each cause of action, claim, issue of duty, or affirmative defense, and each supporting material fact claimed to be without dispute with respect to [each]. In a two-column format, the statement must state in numerical sequence the undisputed material facts in the first column followed by the evidence that establishes those undisputed facts in that same column. Citation to the evidence in support of each material fact must include reference to the exhibit, title, page, and line numbers.' " "Rule 3.1350(e) [also] makes it clear that the opposition must also include a separate statement." (*Whitehead, supra,* 163 Cal.App.4th at p. 901.)

"The requirement of a separate statement from the moving party and a responding statement from the party opposing summary judgment serves two functions: to give the parties

---

moving party of its initial burden. (See. e.g., *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086 [trial court must conduct prima facie review of moving party's evidence despite the absence of an opposing separate statement]; *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 416 [same].) As we have noted, the trial court here expressly conducted that prima facie review of the moving papers before deciding that appellants' failure to file a separate statement was one basis for granting the motion.

notice of the material facts at issue in the motion and to permit the trial court to focus on whether those facts are truly undisputed. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31.) As explained . . . in *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 335 . . . , '[s]eparate statements are required not to satisfy a sadistic urge to torment lawyers, but rather to afford due process to opposing parties and to permit trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are disputed.' " (*Parkview Villas, supra*, 133 Cal.App.4 th at p. 1210.) Thus, the "separate statement is not merely a technical requirement, it is an indispensable part of the summary judgment or adjudication process." (*Whitehead, supra*, 163 Cal.App.4th at p. 902.)

The trial court here observed, after having previously continued the motion three times at appellants' request and finding that respondents had met their initial burden, that appellants had "entirely failed to comply with [section 437c, subdivision (b)(3)] since they have submitted no separate statement in support of their opposition. [Appellants] have submitted no statement that responds to each of the material facts that [respondents] contend to be undisputed, indicating if [appellants] agree[] or disagree[] that those facts are undisputed. [Appellants] have not submitted a statement that references supporting evidence to each material fact that [appellants] contend to be disputed. [Appellants] have satisfied no aspect of [section 437c, subdivision (b)(3)]. Thus, the court in its discretion finds this is sufficient ground alone to grant [respondents'] motion."

43

Under these circumstances, based on the record before us and the law concerning summary judgment, we cannot say that the trial court's decision in this regard was an abuse of discretion. And appellants' briefing on appeal—containing no specific and reasoned argument concerning the trial court's ruling based on the absence of a responsive separate statement, no record references, and little applicable cited authority—does not demonstrate otherwise.

The trial court's order went on, "[i]n addition," to alternatively conclude that appellants' two timely filed oppositions, after disregarding evidence as to which objections had been sustained, had not shown the existence of a triable issue of material fact. We are not in a position to independently review this ruling as appellants' summary judgment opposition filed on August 2, 2023, the second one considered by the trial court, is not in the appellate record (nor was it included in their motions to augment). An appellate court may affirm a summary judgment correct on any legal theory. (*Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 976, fn. 31; *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [appellate court may affirm summary judgment if correct on any legal theory as long as parties had opportunity to address the issue in the trial court].) Here, the absence of a responsive separate statement was raised below and it was one alternative ground on which the trial court granted the motion. This issue has also been raised in the respondents' brief in this court in defense of the judgment and appellants have had the opportunity to address the point on appeal.

As we have concluded that the absence of a responsive separate statement as cited by the trial court as one ground for

44

granting the motion presents no error or abuse of discretion, and as we do not have an adequate record to reach the second ground addressing the merits, we will affirm on the first ground alone.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



WILLIAMS, J.[*]


We concur:


HOFFSTADT, P. J.


MOOR J.

---

[*] Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.